1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUKHWINDER SINGH,<br><br>            Petitioner,<br><br>    v.<br><br>MARK BOWEN, TODD LYONS,<br>KRISTI NOEM, PAMELA BONDI,<br><br>            Respondents. | Case No. 5:25-cv-03381-MRA-E<br><br>**ORDER GRANTING PETITIONER'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDERING IMMEDIATE RELEASE FROM CUSTODY [2]** |

Before the Court is Petitioner's application for a Temporary Restraining Order ("TRO") pending adjudication of his Petition for Writ of Habeas Corpus (the "TRO Application"). ECF 2. Petitioner asks the Court to order his immediate release from custody, or, in the alternative, to order a bond hearing on the merits of his case before an immigration judge pursuant to 8 U.S.C. § 1226(a) and to enjoin his transfer out of the district. The Court read and considered the moving, opposing, and reply papers and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons stated herein, the Court **GRANTS** the TRO Application.

## I.    BACKGROUND

Petitioner Sukhwinder Singh ("Petitioner") filed this habeas petition on December 13, 2025, in which he makes the following allegations. ECF 1. Petitioner was born in

India and entered the United States on April 16, 2023. *Id.* at 1. He entered the United States without inspection and, after being briefly detained, was released on his own recognizance by the Department of Homeland Security ("DHS"). *Id.* He was subject to electronic monitoring and required to check in with Immigration and Customs Enforcement ("ICE") every month. *Id.* On April 19, 2023, DHS served him with a Notice to Appear ("NTA") charging him with removability. *Id.* at 1-2. Petitioner subsequently filed a Form I-589 Application for Asylum with the immigration court and complied with all the conditions of his release. *Id.* at 2. Nonetheless, ICE detained him on August 9, 2025, when he went to his regularly scheduled ICE check-in appointment. *Id.*

Petitioner alleges that he has no criminal history. *Id.*

Petitioner alleges that was gainfully employed prior to his detention. *Id.*

Petitioner alleges that he is not subject to a final order of removal and therefore subject to pre-final order of removal detention under 8 U.S.C. § 1226(a). *Id.*

In the instant TRO Application, which was filed the same day as the petition, Petitioner requests that the Court enjoin Respondents Mark Bowen, Acting Warden of the Adelanto Detention Center; Todd Lyons, Acting Director of ICE; Kristi Noem, Secretary of DHS; and Pamela Bondi, United States Attorney General ("Respondents" or the "government") from continuing to detain him, or alternatively order Respondents to provide him with a bond hearing before an Immigration Judge ("IJ") pursuant to 8 U.S.C. § 1226(a). ECF 2 at 6. The government opposes the TRO Application. ECF 8.

## II.  LEGAL STANDARD

The standard for issuing a TRO and preliminary injunction under Federal Rule of Civil Procedure 65 is the same. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis). Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

1   Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a
2   likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm
3   in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and
4   (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin.*
5   *Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20). Courts in
6   this circuit also employ "an alternative 'serious questions' standard, also known as the
7   'sliding scale' variant of the *Winter* standard," *Fraihat v. U.S. Immigr. & Customs Enf't*,
8   16 F.4th 613, 635 (9th Cir. 2021) (cleaned up), in which the four *Winter* elements are
9   "balanced, so that a stronger showing of one element may offset a weaker showing of
10  another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under
11  this approach, a TRO may be warranted where there are "serious questions going to the
12  merits and a hardship balance that tips sharply toward the plaintiff," and so long as the
13  other *Winter* factors are also met. *Id.* at 1132.

14  **III.   <u>DISCUSSION</u>**

15  A federal district court is authorized to grant a writ of habeas corpus under 28 U.S.C.
16  § 2241 where the petitioner is "in custody under or by color of the authority of the United
17  States . . . in violation of the Constitution or laws or treaties of the United States." 28
18  U.S.C. §§ 2241(c)(1), (3). Notwithstanding this authority, the government argues that the
19  Court lacks habeas jurisdiction to review Petitioner's claims under several provisions of
20  the Immigration and Nationality Act ("INA"). *See* ECF 8 at 12-15. The government has
21  made these arguments in prior cases before this Court, and those arguments have been
22  rejected. *See Soto Munoz v. Semaia et al.*, Case No. 5:25-cv-02898-MRA-BFM, ECF 10
23  at 4–7 (C.D. Cal. Nov. 4, 2025); *Nororis Escobar v. Lyons et al.*, Case No. 5:25-cv-02885-
24  MRA-JC, ECF 10 at 3–6 (C.D. Cal. Nov. 4, 2025). For all the same reasons provided in
25  those decisions, the Court finds that it has jurisdiction to review Petitioner's claims.

26  As for the TRO, the Court finds that Petitioner is likely to succeed on, or at least has
27  raised "serious questions" going to, the merits of his claims that he is unlawfully detained
28  under 8 U.S.C. § 1225(b) and should instead be subject to 8 U.S.C. § 1226(a)'s

discretionary detention scheme.  As in *Nororis Escobar* and *Soto Munoz*, where the Court granted petitioners' TRO requests, Petitioner is not subject to mandatory detention—he is *not* a non-citizen seeking entry into the United States.  *See id.*  Indeed, the government appears to concede that, at least based on this Court's prior decision in *Nororis Escobar*, Petitioner would be entitled to a bond hearing.  *See* ECF 8 at 7-8.  Nor is Petitioner otherwise subject to mandatory detention.  The government does not contest or provide any evidence to challenge, for example, that Petitioner has no criminal history.  They also do not dispute that he is not subject to a final order of removal or that he violated the terms and conditions of his release prior to ICE unexpectedly re-detaining him.

Respondents in fact make no attempt to respond to, and therefore concede, Petitioner's argument that his re-detention violates his due process rights by depriving him of his liberty.  *See generally* ECF 8.  Applying the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976), the Court finds that Petitioner is likely to prevail on his due process claim.

*First*, Petitioner's private interest in freedom from detention is "the most elemental of liberty interests."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).  It is settled law that noncitizens within the United States are entitled to due process "whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in the context of [removal] proceedings.").  Here, when Petitioner was released on his own recognizance from his initial detention, he acquired a liberty interest which entitled him to due process.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (N.D. Cal. 2025).

*Second*, the risk of erroneous deprivation is significant in this case.  Civil immigration detention, which is "nonpunitive in purpose and effect," is justified only when a noncitizen presents a risk of flight or danger to the community.  *See Zadvydas*, 533 U.S. 690.  In releasing Petitioner on parole, the government necessarily determined that he was not a flight risk or danger.  *See, e.g.*, *Singh v. Andrews*, No. 1:25-CV-00801-KES-SKO

(HC), 2025 WL 1918679, at *2 n.1 (E.D. Cal. July 11, 2025); *J.S.H.M v. Wofford*, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *40 (E.D. Cal. Oct. 16, 2025).  In general, "[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).  To re-detain Petitioner following release, the government must present "evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk, or is now subject to a final order of removal." *Id.*  No such evidence has been presented here.  In doing so, the government disregards the principle that civil detention comports with due process only when a "special justification" outweighs the "individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690.

*Third*, the government's interest in re-detaining Petitioner without notice and a custody hearing is minimal.  Custody hearings are "routine and impose a 'minimal' cost." *Singh*, 2025 WL 1918679, at *8 (quoting *Doe*, 787 F. Supp. 3d at 1094-95).  Moreover, the government's interest is further diminished where, as here, "a person 'has consistently appeared for [his] immigration hearings . . . and [ ] does not have a criminal record." *Id.* (quoting <u>Pinchi v. Noem</u>, No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *2 (N.D. Cal. July 4, 2025)).

Petitioner has also established irreparable harm.  "Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (citing *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017)).  Thus, Petitioner "suffers potentially irreparable harm every day that he remains in custody without a hearing, which could ultimately result in his release from detention." *Cortez v. Sessions*, 318 F. Supp. 3d 1134, 1139 (N.D. Cal. 2018) (citation omitted).

The last two *Winter* factors merge when the government is the opposing party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).  Petitioner argues that the balance of equities and the

public interest weigh in favor of granting the TRO because it would be neither equitable nor in the public interest to allow the government to continue to violate federal law.  ECF 2 at 11.   The government responds that it has "a compelling interest in the steady enforcement of its immigration laws."  ECF 8 at 20.

The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue."  *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) (holding that the district court did not abuse its discretion that the balance of hardships weighed in favor of plaintiffs who credibly alleged that the Government was violating the INA).  That the government has an interest in enforcing the immigration laws is of no moment because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends."  *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952)); *see also Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, No. 25-CV-03698-SI, 2025 WL 1482511, at *27 (N.D. Cal. May 22, 2025) (finding that injunctive relief would serve the public interest because "[t]here is generally no public interest in the perpetuation of unlawful agency action" (quoting *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)).  Thus, the balance of equities and the public interest tip sharply in favor of issuing the TRO.

In the TRO Application, Petitioner seeks his immediate release or, in the alternative, a bond hearing on the merits before an IJ pursuant to section 1226(a).  Injunctive relief "should be 'no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court.'"  *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680 (9th Cir. 2021) (quoting *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 511 (9th Cir. 2018)).  The Court finds that releasing petitioner under the same terms and conditions that he was previously subject to is narrowly tailored to remedy the specific harm shown.  *See Lara*, 2025 WL 3255001, at *6.

Finally, the Court exercises its discretion and waives the bond requirement under Rule 65(c), because Respondents have not demonstrated any likelihood of harm if the

Court grants the requested TRO or presented any evidence demonstrating that a bond is needed.

**IV.** **CONCLUSION**

For the foregoing reasons, the TRO Application is **GRANTED**.  The Court **ORDERS** as follows:

1. Petitioner shall be immediately released from custody under the same terms and conditions that he was previously subject to.

2. Respondents are enjoined from re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice describing the change in circumstances requiring his re-detention and a timely hearing.  At any such hearing, Respondents shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a risk of flight or danger to the community; and

3. Respondents are **ORDERED TO SHOW CAUSE** why a preliminary injunction should not issue.  *See* L.R. 65-1.  Respondents shall file any written response to the Order to Show Cause no later than **December 29, 2025**.  Petitioner shall file a reply no later than **December 31, 2025**.  If the parties agree that a preliminary injunction would be moot and/or that dismissal of the habeas petition is warranted, they shall file a joint stipulation no later than **December 29, 2025**.  The Court will order an OSC hearing only if necessary.

This TRO shall take immediate effect on **December 19, 2025**, and expires at 5:00 p.m. on **January 2, 2026**.  The TRO may be extended for good cause or upon Respondents' consent.

**IT IS SO ORDERED.**

Dated: December 19, 2025

HON. MONICA RAMIREZ ALMADANI
UNITED STATES DISTRICT JUDGE

-7-